Michael J. Raymond – 0009272 (mjr@rgslaw.net)
Daniel W. McCarthy – 013326 (dwm@rgslaw.net)
**Raymond, Greer & Sassaman, P.C.**
3636 North Central Avenue, Suite 1070
Phoenix, Arizona 85012-1940
(602) 274-0500

Attorneys for Defendant Philadelphia Indemnity Insurance Company

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Insurance Company, and Oxford Investment Partners, LLC,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>Philadelphia Indemnity Insurance Company,<br><br>　　　　　Defendant. | No. 2:15-cv-00602-PHX-DJH<br><br>**Philadelphia Indemnity Insurance Company's Supplemental Memorandum** |

## Introduction

Since Philadelphia Indemnity Insurance Company filed its Motion for Summary Judgment [Doc. 23] and responded to the Cross-Motion for Summary Judgment [Doc. 25] filed by Federal Insurance Company and Oxford Investment Partners, LLC, Philadelphia has developed additional evidence that undermines Federal and Oxford's coverage arguments as well as Federal's equitable claims for contribution and subrogation. For that reason, in accordance with the Court's October 21, 2016 Order [Doc. 107], Philadelphia submits this Supplemental Memorandum in support of its Motion and in opposition to the Cross-Motion filed by Federal and Oxford.

**Argument**

**1. Federal's coverage admissions and Oxford's inconsistent assertions about coverage plainly conflict with their current contention that only Philadelphia's policy covered Sterling's claim.**

Two new documents from the claims file demonstrate that, before it sued Philadelphia, Federal knew that its policy covered at least part of Sterling's claim against Oxford. The first, an e-mail by James Carson, reveals a significant concern about Federal's policy language, acknowledges that some of the "acts" at issue in the Sterling arbitration were not at issue in the *Facciola* matter or the SEC investigation, and confirms the "reversal" of Federal's position. (April 24, 2013 e-mail from Carson to Reed attached as Exhibit 1; Carson Dep. 102:18-124:14, Sept. 1, 2016, attached as Exhibit 2) The second, a Large Loss Notice authored by Philip Reed, plainly records Federal's decision to reconsider its initial denial and "accept coverage" for Sterling's claim. (Large Loss Notice attached as Exhibit 3; Ex. 2, 125:16-130:3.)

These new documents are entirely consistent with Oxford's September 5, 2012 and April 16, 2013 letters to Federal. In them, Oxford explains why Federal's policy covers the Sterling claim and clearly points out the folly of Federal's initial coverage denial. (Sept. 5, 2012 and April 16, 2013 letters attached as Exhibits 4 and 5.)

Together, these documents demonstrate that, before they sued Philadelphia, both Federal and Oxford believed that Federal's policy provided coverage. Indeed, these documents cast serious doubt on the credibility and veracity with which Federal and Oxford now contend that only Philadelphia's policy covered the Sterling claim.

To be sure, the coverage issue is largely a question of law. And if the Court finds that neither Oxford's tender when investigated by the SEC nor its

tender when served with the *Facciola* subpoena gave Philadelphia adequate notice of Sterling's claim, then the issue is appropriate for summary judgment. But if the Court finds any potential coverage under Philadelphia's policy, then the Court or a jury must allocate coverage.  That is, one of them must compare the coverage under Philadelphia's policy to the coverage under Federal's policy and determine which policy covered which parts of Sterling's claim against Oxford.  After all, Federal has no right to subrogation or contribution for paying a claim or even part of a claim that only its policy covered.  *See Home Indem. Co. v. Mead Reinsurance Corp.,* 166 Ariz. 59, 800 P.2d 46 (Ct. App. 1980).

Thus, like the evidence submitted with Philadelphia's original Motion, Federal's coverage admissions and Oxford's inconsistent assertions about coverage demonstrate that Federal's policy, not Philadelphia's, covered all or part of Sterling's claim.

**2.  Federal's inability to produce a separate assignment demonstrates that Federal is nothing more than a subrogee.**

Carson's deposition testimony together with the settlement agreement between Federal and Oxford defeats Federal's contention that it is anything more than a subrogee.  (Federal/Oxford Settlement Agreement attached as Exhibit 6; Ex. 2, 131:13-135:20.)  Frankly, the "separate assignment theory" has never been entirely clear to Philadelphia.  It may be that Federal thought it could proceed under *Damron*[1] or *Morris*[2] as if it had an agreement that precluded Philadelphia from challenging the amount, if any, of its liability.  (Oct. 29, 2013 e-mail from Carson to Amy Samberg attached as Exhibit 7.)  Or it may be that Federal intended to argue that its $2 million payment settled only those parts of Sterling's claim that potentially fell within the scope of Philadelphia's policy.

---

[1]  *Damron v. Sledge,* 105 Ariz. 151, 460 P.2d 997 (1969).
[2]  *United Services Auto. Ass'n v. Morris,* 154 Ariz. 113, 741 P.2d 246 (1987).

Either way, Federal has used this theory to argue that, if it proves any coverage under Philadelphia's policy, then it is entitled to recover the entire $2 million.

In truth, neither law nor logic supports such a novel approach. *See Home Indem.,* 166 Ariz. at 62, 800 P.2d at 49. But it doesn't matter. Whatever Federal's reasoning, it is now clear that Federal has no separate assignment from Oxford. (Ex. 2, 131:13-135:20; Ex. 6.) The language of the settlement agreement between Oxford and Federal largely follows the language of the policy. Under the policy, Federal is merely a subrogee. And as a subrogee, Federal's rights are no better than Oxford's. *Monterey Homes of AZ, Inc. v. Federated Mut. Ins. Co.,* 221 Ariz. 351, 355, 212 P.3d 43, 47 (Ct. App. 2009).

Thus, if Federal can recover anything from Philadelphia, it can recover only a proportionate share of the $2 million settlement. Federal is not entitled, as an assignee or otherwise, to the full $2 million as argued in its Cross-Motion for Summary Judgment. [Doc. 25, 15:2-16:19; 17:17-26.]

**3. The settlement agreement between Oxford and Sterling establishes that Federal did not acquire any rights to recover for Sterling's investments in Mortgages Ltd. or entities controlled by Tim and Eric Crown.**

While Federal has repeatedly pointed to Sterling's investments in Mortgages Ltd. to demonstrate coverage under Philadelphia's policy and establish, in part, the extent of Oxford's exposure, the settlement agreement between Oxford and Sterling makes clear that Sterling's investments in Mortgages Ltd. and entities controlled by Tim and Eric Crown are largely irrelevant. (Oxford/Sterling Settlement Agreement attached as Exhibit 8.) Federal did not pay to settle claims based on those investments. Indeed, the settlement agreement plainly allocates none of the $2 million payment to those investments and expressly gives Sterling the right to pursue her own recovery. (Ex. 8.) So Federal has no right to prosecute or recover for any claims based on

Sterling's investments in Mortgages Ltd. or any entity controlled by the Crowns. Those rights belong to Sterling.

Granted, Federal disagrees. Carson, who reviewed and approved the agreement, testified at his deposition, and Federal's counsel argued at a recent hearing, that the language of the settlement agreement does not control Federal's rights. (Ex. 2, 153:3-154:22; Oct. 3, 2016 hearing transcript 40:15-42:9, attached as Exhibit 9.) According to Federal, it doesn't matter what rights Sterling reserved or what rights Oxford agreed she could keep. (Ex. 9, 40:15-42:9.) Because it settled these claims against Oxford, Federal believes that it can include them against Philadelphia. (Ex. 9, 40:15-42:9; Doc. 25, 15:2-16:19; 17:17-26.)

Frankly, this argument conflicts with controlling authority. *See Nucor Corp. v. Employers Ins. Co. of Wausau,* 231 Ariz. 411, 420-421, 29 P.3d 74, 83-84 (Ct. App. 2012) (contribution); *Fire Ins. Exch. V. Thunderbird Masonry, Inc.,* 177 Ariz. 365, 369, 868 P.2d 948, 952 (Ct. App. 1993). Federal simply cannot — after the fact — ignore the language of a settlement agreement and collect from Philadelphia exactly what Sterling can collect from someone else. And it simply defies equity for Federal to seek contribution and subrogation on claims for which it paid nothing.

Thus, like much of the record, the settlement agreement between Sterling and Oxford demonstrates that Federal's claims against Philadelphia are neither equitable nor as broad as Federal maintains. Indeed, it reveals that Federal is not entitled to any judgment much less summary judgment.

## Conclusion

For the foregoing reasons, the Court can and should grant Philadelphia's Motion for Summary Judgment and deny the Cross-Motion filed by Federal and Oxford.

1  Dated this 28th day of October, 2016.

2          RAYMOND, GREER & SASSAMAN, P.C.

4  By s/ Michael J. Raymond
    Michael J. Raymond
    Daniel W. McCarthy
    3636 North Central Avenue, Suite 1070
    Phoenix, Arizona 85012
    Attorneys for Defendant Philadelphia
    Indemnity Insurance Company

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2016, I electronically transmitted the foregoing document to the Clerk's office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Robert J. Bruno
Jasmina Richter
Sanders & Parks, PC
3030 N. 3rd Street, Suite 1300
Phoenix, AZ  85012


        s/ Ann E. Blacketer