1  Robert J. Bruno/Bar No. 003383
Jasmina Richter/Bar No. 024180
2  **SANDERS & PARKS, P.C.**
3030 North Third Street, Suite 1300
3  Phoenix, AZ  85012-3099

4  Robert J. Bruno
Direct Phone:  (602) 532-5755
5  Direct Fax:  (602) 230-5006
E-Mail: Robert.Bruno@SandersParks.com
6
Jasmina Richter
7  Direct Phone:  (602) 532-5779
Direct Fax:  (602) 230-5035
8  E-mail:  Jasmina.Richter@SandersParks.com

9  Attorneys for Plaintiffs Federal Insurance
    Company and Oxford Investment Partners
10
**UNITED STATES DISTRICT COURT**
11
**DISTRICT OF ARIZONA**
12
**DIVISION ONE**
13

14  Federal Insurance Company;  and Oxford    | 2:15-cv-00602-PHX-DJH
Investment Partners, LLC,
15                                            | **PLAINTIFFS' RESPONSE TO**
                                  Plaintiffs, | **PHILADELPHIA'S**
16                                            | **SUPPLEMENTAL MEMORANDUM**
v.
17
Philadelphia Indemnity Insurance Company
18  (a foreign corporation),

19                                  Defendant.

20
     Plaintiffs submit the following memorandum in response to Philadelphia Indemnity
21
Insurance Company's ("Philadelphia" or "PIIC") Supplemental Memorandum.
22

23

24

25

26

**MEMORANDUM**

PIIC has not offered any new evidence that bears on the issues presented in the pending motions.  Nor does PIIC argue that there is any new evidence that responds to the overwhelming record already established that coverage for at least the Mortgages Limited aspect of the Sterling claim was triggered through the PIIC policy [*See* Dkt. 25, Dkt. 40 and Dkt 73].  Instead, PIIC argues that: (1) Oxford did not assign any rights to Federal; (2) the Oxford/Sterling settlement agreement somehow has a bearing on Oxford's rights against PIIC for breach of contract and bad faith; and (3) there are notations **in Federal's claim file** that somehow absolve PIIC of breaches of duties **PIIC owed to its own insured**.  Respectfully, each of PIIC's new arguments is seriously flawed.

### I.   Oxford Did Assign Rights to Federal

PIIC's assertion that Oxford did not assign rights to Federal: (1) is not based on any new evidence; (2) contradicts PIIC's judicial admissions in its Answer [Dkt.5] and Statement of Facts [Dkt.35] that a transfer/assignment of rights did take place in the Federal/Oxford agreement; (3) is completely contrary to the testimony in the recently completed depositions; and (4) contrary to established law.

Even prior to filing this lawsuit, Plaintiffs provided PIIC with a copy of the Confidential Mutual Settlement Agreement and Release entered into between Federal and Oxford.[1] In the accompanying letter, counsel explained that, within that Agreement and Release, "Federal reached an agreement with the insureds though which **Federal was contractually subrogated to Oxford's right to coverage through PIIC**."

Thereafter, Plaintiffs' Complaint alleged: "Oxford contractually agreed that Federal shall be subrogated to Oxford's rights to coverage through PIIC."   *See*

---

[1] *See* Exhibit 1.

- 1 -

Complaint, p. 7.  In its Answer, PIIC admitted that allegation.  [Dkt. 5].  In Plaintiffs' Statement of Facts in support of the Cross-Motion for Summary Judgment, Plaintiff stated in ¶38: "Oxford gave Federal an assignment of Oxford's rights against PIIC for the $2,000,000.00 coverage afforded by the PIIC Policy." [Dkt. 26, 9:16 –18]. PIIC responded: "Undisputed that Oxford assigned certain rights to Federal; however, the assignment speaks for itself." [Dkt. 35 at 7:9-11].  In subsequent briefing on the pending cross-motions for summary judgment, PIIC never once contested that Federal, as assignee of Oxford rights against PIIC, had a direct claim for damages against PIIC. Instead, PIIC simply argued that the "assignment gave Federal no greater rights against PIIC than Oxford had." [Dkt.34, 13:18 – 21].

The effectiveness of the transfer/assignment of rights from Oxford to Federal has also been confirmed by both parties to the Federal/ Oxford Settlement Agreement.  James Carson, Federal's Vice President, and John Rosenfeld, Oxford's General Counsel, the two gentlemen who negotiated the terms of the Agreement, both testified that the intent of the language in the agreement was that Federal would be fully vested with any right Oxford had to pursue PIIC for damages up to the full two million dollars of Federal money that Oxford used to fund its settlement with Jan Sterling.[2]

PIIC is incorrect that the rights conferred upon Federal by virtue of its Agreement with Oxford are nothing more than equitable subrogation rights. Under Arizona law, "subrogation can be based on either specific language in the pertinent contract, known as conventional subrogation, or on the equitable doctrine of subrogation." *Fire Insurance Exchange v Thunderbird Masonry*, 177 Ariz. 365, 368, 868 P.2d 948, 951.    Here, Federal has asserted alternative claims against PIIC: (1) a claim based on contractual subrogation whereby Federal, "standing in Oxford's shoes" asserts the rights that Oxford

---

[2] *See* Exhibit 2 at 134:10-135:20 and Exhibit 3 at 120:25-124:6.

contractually transferred to Federal; and (2) a separate claim for equitable subrogation.

## II.   Oxford had a Valid Damage Claim Against PIIC that Oxford Transferred to Federal

Once it is determined that coverage for any aspect of the Sterling claim was triggered through the satisfaction of the notice of circumstances provision in PIIC's Policy, several things follow.  First, PIIC's failure to provide a defense to Oxford in the Sterling case is a breach of PIIC's contract of insurance.  Second, PIIC's claims handler has already admitted that, once it is established that coverage existed, PIIC's duty of equal consideration required PIIC to accept Sterling's settlement demand for PIIC's policy limit.[3]  Third, at the moment PIIC breached its duty to Oxford by rejecting that policy limit demand, Oxford immediately has a chose in action against PIIC for PIIC's failure to fulfill its contractual obligation to tender its policy limit to protect Oxford's interests. Basic contract law confirms that, as to a breach of contract, the general rule is that "the rights of the parties with respect to the breach are fixed at the time of breach and that damages are measured at that time."  *Fairway Builders, Inc. v. Malouf Towers Rental Co., Inc.*, 124 Ariz. 242, 254-55 (1979).

Given that Sterling's Mortgages Limited losses (covered by PIIC) greatly exceeded $2 million, PIIC was liable to Oxford for its policy limit immediately upon PIIC's refusal to tender its limits in response to the settlement demand.[4]  PIIC's new argument that, at that point, PIIC's only responsibility to Oxford was **some proportionate share** of the settlement demand **is specious**.  PIIC's claim handler has already admitted that, once it is determined that coverage existed, it was bad faith for PIIC to fail to tender its entire policy limit to settle the Sterling claim. Even PIIC's

---

[3] *See* testimony of John Magee, 170:24-179:22, [Dkt. 73-1].
[4] *See* testimony of John Rosenfeld, Exhibit 3, 125:15 – 128:12.

attorney recognized that fact when she warned PIIC not to offer $1 million (that a PIIC Vice President had authorized) since it would have been bad faith for PIIC to offer anything less than its policy limit.[5]

In practical terms, PIIC's failure to accept Sterling's policy limit demand exposed Oxford to the financial risk of bearing the entire brunt of Sterling's claim for many more millions of dollars.[6] In that situation, Arizona law is well established that Oxford was entitled to take reasonable steps to protect its interests, including negotiating a reasonable settlement of the underlying Sterling claim. *Arizona Property and Casualty Insurance Guarantee Fund v. Helme,* 153 Ariz. 129, 735 P.2d 451 (1987); *See also, USAA v. Morris,* 154 Ariz. 113, 741 P.2d 246 (1987).  In *Helme*, the Arizona Supreme Court held that the insurer's breach permits the insured to take "reasonable steps to save himself" including "making a reasonable settlement with the claimant…so long as that settlement agreement is neither fraudulent, collusive, nor otherwise against public policy." 153 Ariz. at 137, 735 P.2d at 459.

Here, Oxford took "reasonable steps to protect itself" by settling the Sterling claim. In order to raise the funds necessary for that settlement, Oxford entered into an agreement with Federal that, among other things, in return for the assignment of Oxford's rights against PIIC, Federal would provide the funds necessary to fund the Sterling settlement.[7]  That right of action for Oxford's damages, which immediately accrued as of PIIC's breach, is the primary claim that Federal, standing in Oxford's shoes, has asserted in this case.  Such an assignment of rights is permissible under the principles followed by the Arizona Courts in *Helme* and *Morris*. Further, the cases cited by PIIC are completely inapposite.  None of the cases involve a situation, as here, where an insured contractually

---

5 *See* testimony of John Magee, [Dkt. 73-1] at 174:7 – 176:9.
6 *See* testimony of John Rosenfeld, Exhibit 3 at 124:23 – 130:18.
7 Exhibit 3 at 117:24 – 123:22, 124:23-125:1, 128:6 -11.

transferred a valid chose in action to a third party as Oxford did.[8]

Ironically, that transfer of rights only took place after PIIC's final act of bad faith, when, out of fear it would be an admission of bad faith, PIIC refused to communicate to its insured that the PIIC Vice President had authorized $1 million to settle the Sterling claim. Once PIIC took itself out of the picture by refusing to contact its insured with that settlement authority (coupled with its prior refusal to provide a defense), Oxford had a right, under Arizona law, to protect its own interests by entering into a reasonable settlement of the underlying claim and assigning its rights against PIIC in order to raise the money to accomplish that settlement.[9]

Lastly, no documents in Federal's claim file have a bearing on the pending cross-motions. Federal's coverage was not placed in issue by PIIC's Motion for Summary Judgment.[10] To the extent Federal's coverage may someday be in issue, the record will show that, in the circumstance presented, where the insured was asserting they were left in peril due to a coverage dispute between two insurers, Federal complied with the duty of good faith and protected the insureds interests by settling a disputed claim for coverage.[11] PIIC, in contrast, chose to protect itself at the expense of leaving its insured in peril. As the Arizona Court of Appeals observed in *St. Paul Fire & Marine Ins. Co. v Allstate Ins. Co.*, 25 Ariz. App 309 (1975), "it is undesirable to reward the insurer which refuses to honor its contractual obligations." Here, PIIC's arguments of avoidance for the liability created by its own deliberate bad faith conduct are without merit.

---

8 All of the above shows the flaw in PIIC's argument that the allocation of money within the Oxford/Sterling settlement agreement is relevant. How Sterling chose to allocate the money she received does not change the fact that, at of the moment PIIC breached its duty to Oxford, Oxford had a valid claim against PIIC for at least $2 million in damages and Oxford assigned that claim to Federal.

9 *See* Rosenfeld Deposition, Exhibit 3 at 122:14 – 123:8.

10 Federal's coverage was mentioned, but not placed in issue, within an "either or" argument PIIC made on the equitable contribution issue. [Dkt 23 at 13:12 – 14:25]

11 *See* Settlement Agreement, [Dkt. 26, ¶¶ 37 and 38].

**RESPECTFULLY SUBMITTED** this 4th day of November, 2016.

**SANDERS & PARKS, P.C.**


By    s/ Robert J. Bruno
        Robert J. Bruno
        Jasmina Richter
        3030 North Third Street, Ste. 1300
        Phoenix, Arizona  85012-3099
        Attorneys for Plaintiffs Federal Insurance
        Company and Oxford Investment Partners


**CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2016, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Michael Raymond
mjr@rgslaw.net
Daniel W. McCarthy
Raymond, Greer & Sassaman, P.C.
3636 N. Central Avenue, Suite 1070
Phoenix, AZ  85012

A courtesy copy with a copy of the Notice of Electronic filing was also **mailed** to HONORABLE Diane J. Humetewa on this same date at the following address:

HONORABLE Diane J. Humetewa
United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 625
401 West Washington Street, SPC 81
Phoenix, AZ  85003


By:    /s Zina Seyferth